# Commonwealth of Massachusetts

MIDDLESEX,SS.    TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2281CV03972

Jason Kahan, et al.           , PLAINTIFF(S),

V.

Quanta Finance LLC         , DEFENDANT(S)



## SUMMONS

THIS SUMMONS IS DIRECTED TO  Quanta Finance LLC          . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the  Middlesex Superior    Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your **signed original** response with the Clerk's Office for Civil Business, Middlesex Superior Court, 200 Trade Center, Woburn, MA 01801  (address), by mail or in person, **AND**
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: Michael Ford, Esq, 245 Sumner St, Ste 110, Boston, MA 02128

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

A true copy attest:

_____
Deputy Sheriff

Date of Service: 11/23/22

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on November 18, 2022.

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20 ____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____
_____
_____

Dated: _____, 20 ____    Signature: _____

N.B. **TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

, 20____

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| **PLAINTIFF(S):** Jason Kahan, 72 Dana Street LLC, 74-76 Dana Street LLC | | **COUNTY** Middlesex |
| **ADDRESS:** 23 Sagamore Lane, Boxford, MA 01921 | | |
| | **DEFENDANT(S):** Quanta Finance LLC | |
| **ATTORNEY:** Michael W. Ford, Esq. | | |
| **ADDRESS:** FORD LAW P.C., 245 Sumner Street, Suite 110 East Boston, MA 02128 | **ADDRESS:** 4195 E. Thousand Oaks Boulevard, Suite 201, Westlake Village, CA 91362 | |
| Tel/Fax 1 (617) 328-3400 | | |
| **BBO:** 644807 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A03 | Breach of Contract, 93A, Negligence, Breach of Good Faith & Fair Dealing | F | ☒ YES   ☐ NO |

*If "Other" please describe:

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ............................................................................. $
  2. Total doctor expenses ............................................................................... $
  3. Total chiropractic expenses ...................................................................... $
  4. Total physical therapy expenses .............................................................. $
  5. Total other expenses (describe below) ................................................... $
  Subtotal (A): $

B. Documented lost wages and compensation to date ............................... $
C. Documented property damages to dated .................................................. $
D. Reasonably anticipated future medical and hospital expenses ............. $
E. Reasonably anticipated lost wages ........................................................... $
F. Other documented items of damages (describe below) ......................... $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F):$ N/A

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

The Defendant has breached their contract with Plaintiffs, has attempted to charge a higher and usurious interest rate, has failed to use diligent efforts in the administration of the parties' loan(s), and have negligently violated its duty of care owed to Plaintiffs

TOTAL: $ $1,500,000 +

Signature of Attorney/Pro Se Plaintiff: X _____   Date: 11/17/2022

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____   Date: 11/17/2022

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 2281CV03972 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Jason Kahan et al vs. Quanta Finance Llc | | Michael A. Sullivan, Clerk of Court Middlesex County |
| TO: File Copy | | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION

### DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 02/15/2023 | |
| Response to the complaint filed (also see MRCP 12) | | 03/17/2023 | |
| All motions under MRCP 12, 19, and 20 | 03/17/2023 | 04/18/2023 | 05/16/2023 |
| All motions under MRCP 15 | 03/17/2023 | 04/18/2023 | 05/16/2023 |
| All discovery requests and depositions served and non-expert depositions completed | 09/13/2023 | | |
| All motions under MRCP 56 | 10/13/2023 | 11/13/2023 | |
| Final pre-trial conference held and/or firm trial date set | | | 03/11/2024 |
| Case shall be resolved and judgment shall issue by | | | 11/18/2024 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time. Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service. This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | | PHONE |
|---|---|---|---|
| 11/17/2022 | Debra J Newman | | |

Date/Time Printed: 11-17-2022 15:44:57    SCV026\ 08/2018

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                                                                    SUPERIOR COURT DEPT.
                                                                                                                  C.A.

---

JASON KAHAN, 72 DANA STREET LLC and
74-76 DANA STREET LLC, jointly,

   Plaintiffs,

v.

QUANTA FINANCE LLC,

   Defendants.

---

## COMPLAINT

NOW come the Plaintiffs, Jason Kahan, 72 Dana Street LLC and 74-76 Dana Street LLC, and make the following Complaint:

1. The Plaintiff, Jason Kahan ("Kahan") has a principal and usual place of residence at 23 Sagamore Lane, Boxford, Massachusetts.

2. The Plaintiff 72 Dana Street LLC ("72 Dana") is a Massachusetts limited liability company with a principal place of business at 23 Sagamore Lane, Boxford, Massachusetts.

3. The Plaintiff 74-76 Dana Street LLC ("74-76 Dana") is a Massachusetts limited liability company with a principal place of business at 23 Sagamore Lane, Boxford, Massachusetts.

4. Quanta Finance LLC ("Quanta") is a California limited liability company with a usual place of business at 4195 E. Thousand Oaks Boulevard, Suite 201, Westlake Village, California.

### FACTS COMMON TO ALL COUNTS

5. Kahan is engaged in the business of real estate development.

6. Prior to October of 2020, Kahan, for himself and various real estate holding companies, was engaged in the development of four residential real estate development projects in the Cities of Somerville and Cambridge, located at 171 Cedar Street, 28 Cross Street, 141

Walnut Street, and 72-74-76 Dana Street (together, the Somerville/Cambridge Projects).

7. Due to events immaterial to this action, Kahan was engaged in a refinancing all of the acquisition and construction financing for the Somerville/Cambridge Projects.

8. On or about October 20, 2020 the Plaintiffs secured commitments for refinancing of each of the four Somerville Projects from Bicoastal Capital, a San Diego-based mortgage lender.

9. On or about November 6, 2020, Bicoastal assigned its mortgage funding commitments for the Somerville/Cambridge Projects to Quanta.

10. Quanta did not amend or otherwise alter in writing any of the terms of the loan commitment.

11. Quanta retained the services of the Liss Law Office as closing agent for each of the four loan transactions.

12. Because of the demands of the prior Lender and the default status of its loans, closings on all of the properties was to occur less than one week from the issuance of the first Letter of Intent concerning 72-74-76 Dana Street.

**28 Cross Street**

13. On or about November 9, 2020, Quanta and 28 Cross Street LLC closed on a loan transaction in which Quanta advanced $2,025,000 to pay-off the previous lender and advance construction funds. This transaction required the borrower to contribute $160,000 at closing.

14. At the time of the transaction, the Managers of 28 Cross Street LLC were Jason Kahan and Jonathan Landry, and Landry was a Member of the LLC with equity investment of One Hundred Thousand ($100,000) Dollars in the property.

15. Prior to the transaction, Kahan and Landry were negotiating Landry's replacement as an equity investor with Nestor Limas, as which time Landry would cease to be a Member and would be replaced by Limas, and the Operating Agreement would be properly amended.

16. Quanta's closing agent demanded that closing occur on November 6, notwithstanding his actual knowledge that the Landry buy-out had not occurred yet.

17. Instead, Quanta's closing agent unilaterally accessed the official corporate public records of 28 Cross Street LLC and removed Landry as a Manager, and made amendments to the Operating Agreement to reflect those changes.

2

18. Quanta's closing agent instructed Kahan to obtain a lien release and a release of interest in 28 Cross St LLC from Landry. When Kahan presented the documents to Landry, he declined to execute them.

19. Notwithstanding the absence of Landry's signed release, Quanta's closing agent unilaterally filed a Certificate of Amendment to the LLC that removed Landry as a Manager.

20. Following discovery of his removal as a Manager of 28 Cross Street LLC, Landry demanded immediate payment of the $100,000 he was owed.

21. Quanta's closing agent thereafter falsely claimed to Landry that he had been given verbal consent by Kahan to remove Landry as a Manager of the LLC.

22. The Operating Agreement for 28 Cross Street LLC does not allow for the removal of a manager without notice.

23. The post-closing settlement with Landry involved the new investor, Nestor Limas (through Coliseum Fund I), purchasing Landry's equity interest. Because of the actions of Quanta's closing agent, those negotiations were unnecessarily contentious and drawn out, and cause the new relationship between Kahan and Limas to suffer, to the detriment of Kahan.

24. On June 17, 2022 Kahan was required to refinance 28 Cross St following a year of charged interest due to an approaching maturity date on the loan. At the time of refinance, Kahan paid Landry $65,000 in exchange for his release of liability. Quanta refused any responsibility for its agent's actions.

**171 Cedar Street**

25. On or about November 9, 2020, Quanta and 171 Cedar Street LLC closed on a loan transaction in which Quanta advanced $3,600,000 to pay-off the previous lender and advance construction funds. This transaction required the borrower to contribute $366,000 at closing.

26. Prior to the closing, Kahan had negotiated a repayment of equity to Michael Santangelo, wherein a Promissory Note in the amount of $150,000 from Kahan to Santangelo was executed and recorded on October 30, 2020.

27. Santangelo's exit from the LLC was to be effected so that Nestor Limas (through Coliseum Fund I) could take his place as an equity investor.

28. Quanta's closing agent did perform a title "run down" on the property prior to closing which reflected the encumbrance filed by Mr. Santangelo's counsel. The closing agent claimed the loan was not "perfected" and did not pay the encumbrance balance at the closing. The closing occurred without paying off or discharging the Santangelo Note,

3

leaving Quanta in a junior position.

29. Santangelo discovered that the refinancing had occurred without his pay-off, and threatened to sue Kahan et als.

30. Quanta's closing agent advanced $150,000 of his personal funds to Santangelo, having first secured Kahan's oral promise to repay him.

31. There was no written memorialization of the closing agent's advancement or Kahan's promise to repay.

32. Following the closing and repayment of Santangelo, Quanta's closing agent executed aggressive collection demands, both to Kahan and his new equity partner, Limas, who had nothing to do with the closing agent's "side deal" with Kahan.

33. Because of the actions of Quanta's closing agent, the new ownership entity, Limas's Coliseum Fund I, refused to recognize the Santangelo liability as its liability, resulting in a loss of $155,000 to Kahan.

34. Because of the actions of Quanta's closing agent, the relationship between Kahan and Limas suffered further, to the detriment of Kahan.

### 72-76 Dana Street

35. On or about October 26, 2020, Quanta and 72 Dana Street LLC closed on a loan transaction in which Quanta advanced $3,607,500 to pay-off the previous lender. This transaction required the borrower to contribute $3,506,500 at closing.

36. On the same day, Quanta and 74-76 Dana Street LLC closed on a loan transaction in which Quanta advanced $3,596,500 to pay-off the previous lender. This transaction netted the borrower $3,506,828 at closing.

37. The terms of the loans required that both LLC Managers, Kahan and Nestor Limas, execute personal guarantees.

38. The terms of the original Letter of Intent required only Kahan's personal guarantee.

39. The Lender's Funding Conditions did not require a personal guaranty from Limas.

40. The Lender's Closing Instructions refer to a single personal guarantee.

41. On information and belief, the closing agent transmitted closing documents to Limas through his counsel, only days before the scheduled closing, and did not communicate with either counsel or co-borrower at any time before closing the loan.

42. In order to close the loan on that date, at the closing agent's insistence, hard copies of the closing documents were delivered to Kahan outside, to be signed then and there, on the trunk of his automobile, without an adequate opportunity to review.

43. On October 29, 2022, Limas notified the closing agent and Kahan that he had not seen the closing documents and did not sign the personal guarantee on which his purported signature was affixed.

44. On information and belief, Limas' name was signed by an employee of the closing agent.

45. Because of the forgery of Limas' name on the personal guarantee, Limas demanded that his personal guarantee be voided, and he withdrew as an equity investor in 72 Dana Street LLC.

46. As a result of the forgery of Limas' name, the project's original secured lender, Lewis Capital Fund LLC declared a default, placing Quanta and Lewis Capital in competing positions; and on March 29, 2022, Quanta, Lewis Capital and Kahan negotiated an Intercreditor Agreement to resolve their respective disputes.

47. As a result of the forgery of Limas' name on closing documents, his precipitous demand to withdraw from the enterprise, and the necessity for immediate resolution, Kahan was in a poor negotiating position with respect to the Intercreditor Agreement and was compelled to effectively abandon all of his equity in the Dana Street project.

48. As a consequence of Limas' demands, Quanta refused to advance any of the loan proceeds that were to be used for completion of the construction at Dana Street, bringing the project to an indefinite halt, until the problem could be remedied.

49. As a result of the delay, the Plaintiffs could not sell their remaining unit(s) to generate cash to pay Quanta.

50. However, rather than take any steps to resolve the dilemma that Quanta's agent had created by forging Limas' signature on documents he had not reviewed, Quanta took advantage of the problem its agent had created.

51. Without declaring a formal default, Quanta imposed the default interest rate of 18.5%, and having exhausted the interest reserve it established for itself, unilaterally advanced the balance of the $147,000 in construction funds to itself for payment of accruing interest.

52. As a direct result of Quanta's conduct, the Second Mortgagee, Lewis Capital Funding, also declared the borrowers to be in default.

53. Thereafter, Quanta issued monthly mortgage statements that variously recited accrued interest at rates exceeding the statutory maximum and substantially above the 18.5%

5

default rate provided in the loan documents.

54. Kahan called Quanta's usurious interest to Quanta's attention, but Quanta failed and refused to correct their calculations.

55. But for the forgery of Limas's name by agents of Quanta, the Plaintiffs would not have been defaulted.

### Equity Funding Gap

56. In significant part due to the speed with which all of the transactions needed to be closed, the closing agent did not accurately determine the amount of "cash" that would be required of the borrowers to close all four of the transactions described previously, resulting in a gap in funding.

57. On November 9, 2020, the very date for closing of the loans, the closing agent informed the borrowers that the amount of the gap in equity was $833,561.60.

58. Quanta refused to allow the borrowers a short extension to secure the funding.

59. Quanta's closing agent offered on November 9, 2020 to provide "GAP loan" financing of $854,500.

60. Quanta's closing agent advanced the gap equity in exchange for payment of a 10% fee, and the loan was repaid within two weeks, resulting in the charging of a usurious rate of interest.

61. Because of the timing and circumstances, Kahan and Limas were compelled to either agree to his terms or fail to close, which could have resulted in foreclosure by the original lender on all of the four properties.

## COUNT ONE – CHAPTER 93A §11

62. The Plaintiffs repeat each of the foregoing allegations as though specifically set forth herein.

63. Quanta's conduct in defaulting the Dana Street loans when it was aware of its agent's fault, was unfair or deceptive, and done willfully and knowingly.

64. Quanta's conduct in attempting to charge the Dana Street borrower a higher rate of interest than called for in the loan documents was unfair and deceptive, and done willfully and knowingly.

65. Quanta's conduct in attempting to charge the Dana Street borrower a usurious rate of interest was unfair and deceptive, and done willfully and knowingly.

6

66. The transaction, and Quanta's conduct within it, substantially took place in the Commonwealth of Massachusetts.

67. The act of Quanta's agent in directing the forgery of the co-guarantor's signature on the personal guaranty was unfair or deceptive, and done willfully and knowingly.

68. As a result of unfair and deceptive acts of Quanta and its agent, Kahan, 72 Dana Street LLC and 74-76 Dana Street LLC have been harmed.

## COUNT TWO – BREACH OF CONTRACT

69. The Plaintiffs repeat each of the foregoing allegations as though specifically set forth herein.

70. Quanta's conduct in attempting to charge the Dana Street borrower a higher rate of interest than called for in the loan documents was a breach of contract.

71. Quanta's conduct in attempting to secure the personal guaranty of Limas when the loan commitment did not require it was a breach of contract.

72. As a result of Quanta's breach, the Plaintiffs have been harmed.

## COUNT THREE – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

73. The Plaintiffs repeat each of the foregoing allegations as though specifically set forth herein.

74. Quanta failed to act in good faith or use reasonable diligence in administration of the loan when it declared a default of the Dana Street loans following its discovery of the forgery of Limas' signature on loan documents.

75. As a consequence of Quanta's breach of its covenant of good faith and fair dealing, the Plaintiffs have been deprived of the benefits of their contract.

## COUNT FOUR – NEGLIGENCE

76. The Plaintiffs repeat each of the foregoing allegations as though specifically set forth herein.

77. As the closing agent for the Lender in a commercial loan transaction, the closing agent owed the Plaintiffs a duty of care to perform his responsibilities in a careful and competent manner.

78. In failing to disseminate closing documents sufficiently in advance of the hard closing date, in failing to communicate with the co-guarantor concerning the closing documents at any time, and in directing his office staff to execute the co-guarantor's signature,

7

Quanta's closing agent violated his duty of care to the Plaintiffs.

79. As a proximate result of the closing agent's negligence, the Plaintiffs have been harmed.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiffs request that this Honorable Court grant the following relief:

A. Judgment on all counts of the Complaint;

B. An award of Plaintiffs' actual damages;

C. An award of treble damages, but less than treble damages, and an award of Plaintiffs' costs and attorney's fees incurred in seeking specific performance; and

D. An award of such other relief as the Court deems just.

**THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted,
**JASON KAHAN, 72 DANA STREET LLC, and 74-76 DANA STREET LLC,**
By their attorneys,

Michael W. Ford (BBO # 644807)
Peter B. Morin (BBO #355155)
Ryan M. Gazda (BBO # 693573)
FORD LAW P.C.
245 Sumner Street, Suite 110
East Boston, MA 02128
Tel: 617-328-3400, Ext. 101
mford@fordlawpc.com

Dated: November 17, 2022

8